Zimmerman, J.
 

 These appeals challenge the constitutionality of the Ohio Minimum Wage Act (Sections
 
 *156
 
 154-45J to 154-45i, General Code) fixing minimum fair wage standards for women and minors.
 

 The contentions of the defendants, appellants herein, are stated in their brief as follows:
 

 “1. The General Assembly of the state of Ohio has not the power or authority under the Constitution to enact minimum wage legislation in the form it has attempted in the act under question.
 

 “2.
 
 The Minimum Wage Law provides for an unauthorized delegation of legislative power.”
 

 Authority for the enactment of legislation on the subjects of hours of labor and minimum wages is found in Section 34, Article II of our Constitution, adopted by vote of the electors of the state of Ohio on September 3, 1912, which reads:
 

 “Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the Constitution shall impair or limit this power. ’ ’
 

 This brings us to a resume of the statutes, enacted by the General Assembly pursuant to the quoted constitutional grant of power, which are pertinent to the instant cases.
 

 Section 154-45d, General Code, is devoted to definitions. Embraced in the section are the following statements:
 

 “7. ‘An oppressive and unreasonable wage’ shall mean a wage which is both less than the fair and reasonable value of the services rendered and less than sufficient to meet the 'minimum cost of living necessary for health.
 

 “8. ‘A fair wage’ shall mean a wage fairly and reasonably commensurate with the value of the service or class of service rendered. In establishing a minimum fair wage for any service or class of service under this article, the director, superintendent or the
 
 *157
 
 wage board without being bound by any technical rules of evidence or procedure (1) may take into account all relevant circumstances affecting the value of the service or class of service rendered, and (2) may be guided by like considerations as would guide a court in a suit for the reasonable value of services rendered where services are rendered at the request of an employer without contract as to the amount óf the wage to be paid, and (3) may consider the wages pai*d in the state for work of like or comparable character by employers who voluntarily maintain minimum fair wage standards.”
 

 We are of the opinion that the phrases, “may take into account,” “may be guided” and “may consider,” as used in paragraph eight of the section should be interpreted as meaning,
 
 “shall
 
 take into account,” etc.', in older to carry out the purpose of the General Assembly as it appears from a general view of the act under consideration.
 
 State, ex rel. Myers,
 
 v.
 
 Board of
 
 Education, 95 Ohio St., 367, 116 N. E., 516;
 
 Mary Lincoln Candies, Inc.,
 
 v.
 
 Dept. of Labor,
 
 289 N. Y., 262, 45 N. E. (2d), 434, 143 A. L. R., 1078.
 

 Section 154-45e, General Code, declares the policy of the act as follows:
 

 “It is hereby declared to be against public policy for any employer to employ any woman or minor in an occupation in this state at an oppressive and unreasonable wage as defined in section 1 of this .act, and any contract, agreement or understanding for or in relation to such employment .shall be null and void. ’ ’
 

 Section 154-45/, General Code, confers authority on designated officials to investigate and ascertain the wages of women and minors employed in any occupation in the state.
 

 Section 154-45#, General Code, provides that the director shall appoint a wage board to*report upon the establishment of minimum fair wage rates for women
 
 *158
 
 and minors in a given occupation if he is of the opinion that any substantial number of such women and minors are receiving oppressive and unreasonable wages.
 

 Section 154-45/i, General Code, provides for wage boards composed of representatives of employers, employees and the public, with a detailed outline of their rights and duties.
 

 By Sections 154-451 and
 
 154-45j,
 
 provision is made for the acceptance or rejection by the director of the wage boards’ findings, and for the publication of such findings as a directory order defining minimum fair wages in the particular occupation, if such findings are accepted. Section 154-45j also empowers the director in comprehensive terms to embody in his directory order such administrative regulations as he deems appropriate to safeguard the minimum fair wage standards established.
 

 Section 154-45m, General Code, authorizes the director to make his directory orders mandatory after they have been been in effect for three months.
 

 Section 154-45n provides that the director may change his orders through the same procedure by which he originally made them, and Section 154-45o permits changes in administrative regulations.
 

 By Section 154-45p it is provided that decisions of the director on questions of fact shall be final, and that rulings and holdings on questions of law involved in his decisions, or orders may be reviewed by the Court •of Common Pleas.
 

 In summation, the powers which the director possesses under the Minimum Wage Act are:
 

 1. To appoint wage boards to recommend, after investigation, minimum wages for women and minor workers, based on standards prescribed by the General Assembly.
 

 2. To accept or reject the boards’ findings.
 

 3. To publish the findings accepted, as a directory
 
 *159
 
 order defining minimum fair wages in an occupation and later to make such order mandatory.
 

 4. To publish administrative rulings in amplification of the orders, and to classify wage rates within an occupation.
 

 In view of the foregoing analysis of various provisions of the Minimum Wage Act, does such act exceed the contemplation of Section 34, Article II of the Constitution, or constitute the delegation of legislative power in contravention of Section 26, Article II of the same instrument?
 

 In annotation, 143 A. L. R., 1086, the following statement is made, which we believe to be accurate:
 

 “Since the decision of the United States Supreme Court in
 
 West Coast Hotel Co.
 
 v.
 
 Parrish
 
 (1937), 300 U. S., 379, 81 L. Ed., 703, 57 S. Ct., 578, 108 A. L. R., 1330, the law has come to be settled that as a general proposition, a federal or state statute fixing, or properly authorizing administrative authorities to fix, minimum wages for services rendered in private' employment does not violate the Fifth or Fourteenth Amendments to the federal Constitution, or corresponding provisions of state constitutions.” •
 

 In the case referred to in the above quotation, the United States Supreme Court expressly overruled.its previous decision in
 
 Adkins et al., Minimum Wage Board of Dist. of Columbia,
 
 v.
 
 Childrens’ Hospital,
 
 261 U. S., 525, 67 L. Ed., 785, 43 S. Ct., 394, 24 A. L. R., 1238, and announced the broad principle that a minimum wage law, in order to be constitutional, need not require that a minimum wage be based upon the value of the services rendered, but may prescribe a Standard based upon the needs of the employees.
 

 It is said in 16 Corpus Juris Secundum,'342, Section 133: ■
 

 “With the growing complexity of modern life, the multiplication of the subjects of governmental regula
 
 *160
 
 tion, and the increased difficulty of administering the laws, there is a constantly growing tendency toward the delegation of greater powers by the. Legislature, and toward the approval of the practice by the courts * # * > ?
 

 See
 
 Zangarle, Aud.,
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 563, 572, 41 N. E. (2d), 369, 373.
 

 Many years ago, Mr. Justice Agnew of the Supreme Court of Pennsylvania used this frequently quoted language in his opinion in the case of
 
 Locke’s Appeal,
 
 72 Pa., 491, 498, 13 Am. Rep., 716, 722:
 

 ‘ ‘ The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.”
 

 In similar vein is the statement of Judge Raimey in the case of
 
 Cincinnati, Wilmington & Zanesville ltd. Co.
 
 v.
 
 Commrs. of Clinton County,
 
 1 Ohio St., 77, 88:
 

 “The true distinction, therefore, is,'between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.”
 

 The Ohio Minimum Wage Act is a welfare measure passed by the General Assembly pursuant to the authority conferred by Section 34, Article II of the Constitution. The act sets forth the policy motivating the act, outlines the standards to be observed in the determination of a “fair wage,” and prescribes the pro
 
 *161
 
 cedure to be followed by the administrative agency designated to carry the law into execution.
 

 In the third paragraph of the syllabus in the case of
 
 Belden
 
 v.
 
 Union Central Life Ins. Co.,
 
 143 Ohio St., 329, 55 N. E. (2d), 629, the following rule was adopted:
 

 “It is no violation of the constitutional inhibition against the delegation of legislative power for the General Assembly to establish a policy and fix standards for the guidance of administrative agencies of government while leaving to such agencies the making of subordinate rules within those fixed standards and the determination of facts to which the legislative policy applies.”
 

 Without constitutional authorization, the General Assembly of Ohio could have enacted a minimum wage law in the exercise of the police power, as has been done by the legislative bodies of other states. In situations where legislation has been adopted -in the exercise of the police power for the protection of public morals, health, safety or general welfare, this court has been liberal in approving the legislation even though it confers wide discretion on an executive officer or board and fails to establish precise and definite standards for his or its guidance. See
 
 Yee Bow
 
 v.
 
 City of Cleveland,
 
 99 Ohio St., 269, 124 N. E., 132, 12 A. L. R., 1424;
 
 Matz, Admr.,
 
 v.
 
 J. L. Curtis Cartage Co.,
 
 132 Ohio St., 271, 7 N. E. (2d), 220;
 
 Coady
 
 v.
 
 Leonard et al., Bd. of Liquor Control,
 
 132 Ohio St., 329, 7 N. E. (2d), 649.
 

 A number of cases have been decided, involving the constitutionality and validity of minimum wage acts resembling in important details the Minimum Wage Act of Ohio. Those cases hold that laws, empowering a designated state agency, after investigation and upon policies and considerations outlined in the legislation, to fix minimum wages for women and minor workers in private industry, do not constitute the dele
 
 *162
 
 gation of legislative power and are constitutionally valid in other respects. See
 
 Williams
 
 v.
 
 Evans,
 
 139 Minn., 32, 165 N. W., 495, 166 N. W., 504, L. R. A., 1918F, 542;
 
 G. O. Miller Telephone Co.
 
 v.
 
 Minimum Wage Comm.,
 
 145 Minn., 262, 177 N. W., 341;
 
 Associated Industries of Oklahoma v. Industrial Welfare Comm.,
 
 185 Okla., 177, 90 P. (2d), 899;
 
 Stettler
 
 v.
 
 O’Hara,
 
 69 Ore., 519, 139 P., 743, L. R. A., 1917C, 944, Ann. Cas., 1916A, 217, aff. without opinion, 243 U. S., 629, 61 L. Ed., 937, 37 S. Ct., 475;
 
 McGrew
 
 v.
 
 Industrial Comm.,
 
 96 Utah, 203, 85 P. (2d), 608;
 
 Larsen
 
 v.
 
 Rice,
 
 100 Wash., 642, 171 P., 1037;
 
 Spokane Hotel Co.
 
 v.
 
 Younger,
 
 113 Wash., 359, 194 P., 595.
 

 The very contentions advanced by appellants herein have been fully and ably disposed of in the cases last cited and we deem it unnecessary to pursue the matter at greater length.
 

 By Section 154-45p, General Code, an aggrieved employer may have a judicial , review of any ruling or holding of the director “on a question of law included or embodied in any decision or order of the director.” Tins affords him protection and meets the constitutional guarantee of due process.
 
 Slatmeyer
 
 v.
 
 Industrial Commission,
 
 115 Ohio St., 654, 155 N. E., 484;
 
 State, ex rel. City Loan & Savings Co.,
 
 v.
 
 Taggart, Recorder,
 
 134 Ohio St., 374, 17 N. E. (2d), 758. See, also, Stettler v.
 
 O’Hara, supra;
 
 16 Corpus Juris Secundum, 1287, Section 629.
 

 ■ Therefore, this court has reached the conclusion that the Minimum Wage Act of Ohio is complete in itself and does not represent delegation of legislative power; it meets the tests of sound legislation as approved by this court and other courts in the cases above cited and does not offend or transgress the federal or state Constitutions.
 

 The Minimum Wage Act has been in operation as a part of the laws of Ohio since 1933. In the opinion of
 
 *163
 
 the writer, if this court were now to strike down this salutary legislation it would be doing a real disservice to the women and minor employees of this state and would be placing itself in opposition to present-day concepts as to the measures necessary and proper to insure the welfare and well-being of those employed in business and industry generally.
 

 It follows that the judgments of the Court of Appeals should be and are hereby affirmed.
 

 Judgments affirmed.
 

 Weygandt, C. J.', Turner, Matthias, Hart, Sohngen and Stewart, JJ., concur.