EASTLAND WOODS, APPELLANT, *v.* CITY OF TALLMADGE ET AL., APPELLEES.

[Cite as Eastland Woods *v.* Tallmadge (1983), 2 Ohio St. 3d 185.]

(No. 81-1886—Decided January 5, 1983.)

---

[1] Olalla Street provided alternative access to the development.

*Messrs. Oestreicher, Sternberg & Manes, Ms. Dianne R. Newman* and *Mr. Richard Sternberg,* for appellant.

*Mr. Frederick W. Lawrence,* law director, for appellee Tallmadge.

*Newman & Graves Co., L.P.A.,* and *Mr. Alfred E. Schrader,* for appellees Stewart and Gray.

*Per Curiam.* In Ohio, a property owner, having other means of access to his property, may not enjoin the vacation of a public way, or receive damages for its closing, unless his property abuts the vacated street. As this court stated in *Kinnear Mfg. Co.* v. *Beatty* (1901), 65 Ohio St. 264, 282-83:

"* * * The decisions in this state have clearly established that an abutting lot owner has such an interest in the portion of the street on which he abuts, that the closing of it * * * is a taking of private property for a public use, and cannot be done without compensation. * * * But where the party complaining is not an abutter upon the obstructed or vacated portion of a street, or way, and has ample means of access to his property by other streets and public ways, a very different case is presented. In such case he is simply one of the general public, suffering an inconvenience common to all, though he may by reason of proximity, suffer a greater inconvenience than others, he is in no way distinguished from them except in degree. To give the individual a right in such cases to be heard, either in a suit for damages or by injunction, he must aver and show, that the injury he suffers is different in kind from that of the general public. This he may do by showing that his easement in the street, as a means of access to his property, is impaired or destroyed. His easement, however, is limited to the portion of the street on which he abuts, or a street which affords him the only means of access to his property. Where his property is not in physical contact with the vacated portion of the street, and he has other reasonable means of access, the individual has no right of action by which he can enjoin the obstruction, or recover damages. * * *"

Here, the vacation of Sperry Drive did not impair appellant's *sole* means of access. Therefore, appellant has a right to maintain this action only if it is deemed to be an abutting landowner. Hence, we must determine whether appellant's property abuts the vacated portion of Sperry Drive.

Whether or not appellant's property abuts the vacated portion of Sperry Drive requires an examination of the meaning of abutting. This is necessary because of the unique relationship between appellant's property and the vacated portion of Sperry Drive. At one time, Sperry Drive terminated at appellant's property line. However, the development's plan required the dedication of a portion of the land for the extension of Sperry Drive into Akron. Consequently, appellant's property and the vacated portion of Sperry Drive merely touched at two points, the northeasternmost and northwesternmost of the latter.

This court has not had occasion to decide this precise question. However, other courts have, and those courts have held that for property to abut a street it must share a common border with it. See, *e.g.*, *Lincoln* v. *Cather & Sons Constr., Inc.* (1980), 206 Neb. 10, 290 N.W. 2d 798; *Ables* v. *Southern Ry. Co.* (1909), 164 Ala. 356, 51 So. 327; *Nichols* v. *Richmond* (1894), 162 Mass. 170, 38 N.E. 501; *Boonville Mercantile Co.* v. *Hogan* (1920), 205 Mo. App. 594, 226 S.W. 620. See, also, 10 McQuillin, Municipal Corporations (3 Ed.), 723, Section 30.55.

The rule was stated by the Nebraska Supreme Court in *Lincoln, supra,* at 16, 290 N.W. 2d, at 802:

"* * * In other words, there is a recognition that before properties may abut each other there must be some common boundary line and not merely a minute pin-point touching occasioned by the existence of a common vertex."

We are convinced that these authorities state the correct principle. As there is no common border between appellant's property and Sperry Drive in Tallmadge which could reasonably have afforded access to the vacated street, appellant was not an abutting landowner. Therefore, appellant had no right to enjoin the vacation of Sperry Drive or to receive damages for its closing.

As an alternative reason for reversal, appellant argues that Tallmadge did not act in a manner consistent with R.C. 723.05. R.C. 723.05[2] authorizes municipal corporations to vacate streets for good cause. Appellant argues that Tallmadge did not have good cause for vacating Sperry Drive, so it acted beyond the grant of legislative authority.

R.C. 723.05 does not define good cause. However, it has been said that good cause exists in the absence of a showing of fraud or abuse of discretion. *Smith* v. *Wintersville* (1962), 90 Ohio Law Abs. 47, 48. See, also, *Clifford* v.

_____

[2] R.C. 723.05 provides, in pertinent part:

"When, in the opinion of the legislative authority, there is good cause for vacating or narrowing a street or alley, or any part thereof, and that such vacation or narrowing will not be detrimental to the general interest, it may, by ordinance and without petition therefor, vacate or narrow such street or alley or any part thereof."

*Cheyenne* (Wyo. 1971), 487 P. 2d 1325, 1328; *Bowles v. Antonetti* (1966), 241 Cal. App. 2d 283, 286, 50 Cal. Rptr. 370, 373; *Kader v. Clawson* (1967), 7 Mich. App. 380, 382, 151 N.W. 2d 844, 845. The act of vacating a street is a legislative act and, as with other legislative acts, it will be presumed, in the absence of a clear showing to the contrary, that the General Assembly acted in good faith to further a valid public purpose. Cf. *State v. Saurman* (1980), 64 Ohio St. 2d 137, 138-139 [18 O.O.3d 367]. See, also, *London v. Seattle* (1980), 93 Wash. 2d 657, 661-662, 611 P. 2d 781-785.

Here, the record does not support a clear showing that the legislative authority of Tallmadge either acted fraudulently or abused its discretion. As the trial court pointed out, there was not even an allegation of fraud. Further, the record supports a finding that the vacation of Sperry Drive was necessary to prevent the changing of quiet residential streets into thoroughfares between Akron and Tallmadge. Acting to prevent this from happening does not constitute an abuse of discretion.[3]

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

W. BROWN, SWEENEY, LOCHER, HOLMES and KRUPANSKY, JJ., concur.

CELEBREZZE, C.J., and C. BROWN, J., dissent.

CELEBREZZE, C.J., dissenting. While I agree with the majority that the record does not establish that the city of Tallmadge acted fraudulently, or abused its discretion, I cannot concur with their reasoning in ruling that appellant's land did not abut the vacated street. Therefore, I respectfully dissent.

The majority opinion ignores this court's previous definition of "abutting." While arising in a different context, in the case of *In re Appropriation for Hwy. Purposes* (1969), 18 Ohio St. 2d 214 [49 O.O.2d 242], we defined the term "abuts" to mean simply " 'to touch along a border' or 'to border on.' " *Id.* at paragraph two of the syllabus. Applying that definition to the instant cause, it is clear to me that the points of intersection between appellant's land and the city of Tallmadge fall within that definition making appellant an abutter to the vacated portion of Sperry Drive in Tallmadge. Precisely, appellant's property "touch[es] along a border" of the vacated street. For that reason, I would hold that appellant is an "abutter" and entitled to protection under *Kinnear Mfg. Co. v. Beatty* (1901), 65 Ohio St. 264; *New York, Chicago & St. Louis Rd. Co. v. Busci* (1934), 128 Ohio St. 134; and *State, ex rel.*

---

[3] Appellant also argues that Tallmadge's actions had, at least in part, a racially discriminatory intent. Not only does the record not support such an assertion, but, also, it was not raised below. Therefore, we need not discuss it. See, *e.g., Hospitality Motor Inns v. Gillespie* (1981), 66 Ohio St. 2d 206, 208, fn. 2 [20 O.O.3d 209].

*Merrit,* v. *Linzell* (1955), 163 Ohio St. 97 [56 O.O. 166]. The following portion of *Kinnear, supra,* cited by the court actually supports this proposition. It was stated in *Kinnear, supra,* at 283:

"* * * Where his property is not in *physical contact* with the vacated portion of the street, and he has other reasonable means of access, the individual has no right of action by which he can enjoin the obstruction, or recover damages. * * *" (Emphasis added.)

Thus, the focus of the inquiry is whether the allegedly abutting land is in physical contact with the vacated street. It is undisputed that appellant's land is in physical contact with the portion of Sperry Drive vacated by the city of Tallmadge. Hence, appellant must be considered an abutter under the law.

Moreover, the majority opinion creates more problems than it resolves. While determining that two points of intersection do not amount to "abutting," the court does not offer a workable definition of that term. This begs the question of how many "points" of intersection will be necessary before a landowner is considered an "abutter" to a vacated street.

In my view, the far better course is to hold that if property touches any point along the vacated public street, the property owner will be deemed an "abutting" landowner and be entitled to enjoin the vacation until compensation is paid, however slight, for the impairment of access to the abutting property.

Accordingly, I would reverse the judgment of the court of appeals.

CLIFFORD F. BROWN, J., dissenting. Pursuant to R.C. 723.05 a city council has the authority to determine when a street shall be vacated:

"When, in the opinion of the legislative authority, there is *good cause* for vacating * * * a street * * * or any part thereof, and that such vacation or narrowing *will not be detrimental to the general interest,* it may, by ordinance and without petition therefore, vacate * * * such street * * * or any part thereof." (Emphasis added.)

Absent fraud or abuse of discretion, the legislative decision to so vacate shall not be reviewed by the court. *Smith* v. *Wintersville* (Jefferson App. 1962), 26 O.O. 2d 40, 187 N.E. 2d 511. Thus, the only issue for our determination is whether the city of Tallmadge abused its discretion in finding that "good cause," within the meaning of R.C. 723.05, existed when it enacted an ordinance which vacated a fifteen-foot portion of a residential street located within its limits and effectively denied direct access to its city by residents of the city of Akron.

This issue remains the same whether appellant, Eastland Woods, Inc., is construed as an abutting property owner on Sperry Drive or the owner of property adjacent to appellees Stewart and Gray who are abutting property owners on the vacated portion of Sperry Drive. Thus the lengthy discussion by this court about "whether appellant's property abuts the vacated portion of Sperry Drive" and the analysis of *Kinnear Mfg. Co.* v.

*Beatty* (1901), 65 Ohio St. 264 and *Lincoln* v. *Cather & Sons Construction, Inc.* (1980), 206 Neb. 10, 290 N.W. 2d 798 and the addition of further citations pertaining to the meaning of "abutting," is entirely irrelevant to resolution of the only issue in this case, namely, whether the vacation of a portion of Sperry Drive is for "good cause" within the meaning of R.C. 723.05.

Even if it is relevant and necessary to determine the appellant's property "abuts the vacated portion of Sperry Drive," *Kinnear Mfg. Co.* v. *Beatty, supra,* the only Ohio case cited by the majority on this issue, is factually inapplicable. *Kinnear* referred to an adjoining owner on an alley as an abutting owner of the vacated way if it could be factually determined that the owner's property touched the vacated way at any point. In *Kinnear* the owner's property did not "touch" the vacated way, but was some distance from that portion of the alley that had been vacated. Cf. *New York, Chicago & St. Louis R.R. Co.* v. *Bucsi* (1934), 128 Ohio St. 134, 140. Therefore, the better rule is that an abutting owner of a vacated way is one whose property physically touches the vacated way at some point or points. Such an abutting owner is damaged just as much as one whose property forms a common boundary of a few inches or a few feet with the vacated street. Otherwise R.C. 723.05 is made a nullity.

In an attempt to justify the city of Tallmadge's finding of "good cause," the appellees Stewart and Gray assert that the closing of Sperry Drive was motivated by the desire to preserve the residential character of the neighborhood. Appellees set forth dire predictions that traffic hazards will develop in the area if vacation is not allowed and that this would jeopardize the safety of Tallmadge children.

I readily acknowledge that a municipality has a legitimate interest in preserving the safety and well-being of its children and that of the residential character of a local community. However, the fact remains that the city of Tallmadge took this unique step at the insistence of the two appellee property owners whose petition for vacation was filed only after it was made public that appellant's development would be for low income families, subsidized by federal funds, and would include blacks as residents.[4]

While the erection of a barrier may arguably benefit the two residential owners located on Sperry Drive by preserving comparative tranquility in their neighborhood, it would adversely affect the residents of appellant's

---

[4] As such, the instant situation is markedly similar to that encountered by the United States Supreme Court in *Memphis* v. *Greene* (1981), 451 U.S. 100, and summarized by Justice Marshall in his dissent as follows:

"* * * My own examination of the record suggests, however, that far more is at stake here than a simple street closing. The picture that emerges from a more careful review of the record is one of a white community, disgruntled over sharing its streets with Negroes, taking legal measures to keep out the 'undesirable traffic,' and of a city, heedless of the harm to its Negro citizens, acquiescing in the plan." *Id.* at 136.

development by depriving the latter of a direct means for emergency vehicles to gain access to their area. The fact that "children have become accustomed to using our quiet streets as a natural extension of their own yards in their play activities" cannot justify depriving the residents of Eastland Woods of an access route which planners for the city of Akron consider to be essential to *their* safety and well-being.

The closing of Sperry Drive results in an erection of more than a physical barrier which will impede the passage of emergency vehicles. The vacation necessarily restricts the free flow of travel and is thus against this state's public policy which favors unobstructed passage along roads between communities. See *Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245. In a case such as this where the vacation of a public street of one municipality affects so vitally the essential right of the citizens of the adjoining municipality, the legislating body must balance the conflicting needs of each community. Under these circumstances, "good cause," as contemplated in R.C. 723.05, means good cause not only for individual property owners or for inhabitants of a particular area in Tallmadge, but also for those citizens of Akron upon whom the decision to vacate so greatly impacts.[5]

In the present case, no new or more convenient means of travel have been created nor any economic savings benefiting the public been alleged which would support a finding of "good cause." Moreover, although appellees contend that the closing of Sperry Drive will amount to no more than an "inconvenience" to the members of the Eastland Woods community, the record before us will not permit acceptance of such a characterization.

What the record does show is that there is only one access road presently serving the one hundred homes located in the Eastland Woods allotment. Unless Sperry Drive is reopened, establishment of a secondary route is highly unlikely.[6] Appellees' assertion that the Tallmadge children would no

---

[5] See *Yarrow First Associates* v. *Town of Clyde Hill* (1965), 66 Wash. 2d 371, 403 P. 2d 49, in which a vacation to prevent the use of a street by nonresidents was enjoined on the grounds that such vacation was not "based upon some element of 'public use.' " The court in *Yarrow*, defined "public use" as encompassing "the whole people" and set forth the following rationale in support of its decision:

"* * * No doubt * * * [the numerous towns which have clustered together with interlocking city 'lines have] numerous conflicting ordinances and community interests. However, if each town was permitted to close the streets to its neighbors because they increased traffic flow without paying taxes, or because they desired to punish the adjoining town for having a conflicting zoning ordinance, chaos would result. Each town would be landlocked by its neighbors. No traffic would move. Commerce would die. The legal barriers, though written on paper, would be as effective as if constructed of concrete blocks. To state the proposition is to refute it." *Id.* at 377.

[6] In 1973, the city of Tallmadge requested that Akron have access to its city by one of three streets. Tallmadge suggested three alternate routes: two of the roads existed only on paper and were unpaved and incomplete in 1980; only Sperry Drive was fully improved. Based on the apparent endorsement by Tallmadge of Sperry Drive as a connecting street, appellant constructed houses on the land which could otherwise have been used to extend the two previously considered streets.

longer be able to use the street as a playground is not sufficient to override the needs of one hundred families who require a direct means for emergency vehicles to gain access to their area. In any event, the circuitous design of the local streets in both Tallmadge and Eastland Woods negates any argument that traffic hazards would develop.[7] Finally, there is evidence that this case involves nothing more than two feuding communities intent on proving their political supremacy.[8] This court should not elevate such pettiness to the level of "good cause."

The Tallmadge City Council abused its discretion when, in the face of the above evidence, it made the determination that the vacation of Sperry Drive was for good cause and not detrimental to the general interest.[9] We need only balance the needs of the Tallmadge residents with those of the Eastland Woods residents to conclude that the city council acted unreasonably and in violation of R.C. 723.05 in enacting this ordinance. Appellant, is therefore entitled to a judgment enjoining the vacation of Sperry Drive.

Therefore the decision of the court of appeals should be reversed and the Tallmadge ordinance thereby nullified.

---

[7] Indeed, the choice of Sperry Drive as the connecting street was predicated on the fact that due to the circuitous design of the local streets in both allotments, connection at this point would provide a means for emergency vehicles to gain access to the Akron area *without* encouraging through traffic.

[8] The transcript of the highly charged Tallmadge City Council hearing during which the ordinance at issue was passed is replete with examples of political posturing, and bickering between the two municipalities. At least one member of council voted for the ordinance because he did not appreciate "the way * * * [the] development was handled." He felt that both Akron and the developer had been "discourteous" in their communications with the city of Tallmadge and that such "lack of cooperation" constituted "negligence in correspondence."

[9] Abuse of discretion by the Tallmadge City Council, warranting reversal of the court of appeals, is obvious. The ordinance of the city council, approved by the lower courts, constitutes action which is grounded upon ill-will toward neighbors, and is in direct conflict with the Biblical command, as follows:

"35. Then one of them, which was a lawyer, asked him a question, tempting him, and saying,

"36. Master, which is the great commandment in the law?

"37. Jesus said unto him, Thou shalt love the Lord thy God with all thy heart, and with all thy soul, and with all thy mind.

"38. This is the first and great commandment.

"39. And the second is like unto it, Thou shalt love thy neighbor as thyself." New Testament, Matthew, Chapter XXII, verses 34-39.

"18. Thou shalt not avenge, nor bear any grudge against the children of thy people, but thou shalt love thy neighbor as thyself: I am the Lord." Old Testament, Leviticus, Chapter XIX, verse 18.